UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSE HERNANDO RODRIGUEZ,<br><br>       Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>       Defendant. | 11 Civ. 2957<br><br>**OPINION** |

  *Pro se* petitioner Jose Hernando Rodriguez was convicted in this court on two counts of murder while engaged in federal narcotics felonies. He brings this motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence, arguing that he was deprived of his Sixth Amendment right to effective counsel by his lawyer's actions and omissions at trial.

  Petitioner's motion is denied, except insofar as an evidentiary hearing will be held to resolve petitioner's claim that his trial counsel failed to communicate the terms of a plea offer received the day before his trial.

**Background**

  I)  Facts

  From approximately 1997 to 1999, petitioner was a leader of a robbery crew that targeted narcotics traffickers and jewelers. The crew chose victims based on information from tipsters who later received a share of the take from the robbery. On March 15, 1999, one such tipster, Joel Spigelman, told petitioner that a female drug courier would deliver fifty kilograms of cocaine to

his house in Queens in a car containing a further one hundred fifty kilograms of cocaine. Spigelman suggested that petitioner's crew rob the courier after her departure and murder the courier so that the robbery could not be traced to Spigelman. Petitioner agreed to do so, and the plan was carried out with the assistance of another robbery crew on March 17, 1999.

On September 13, 2005, petitioner, Spigelman, and co-defendant Marco Boniton were indicted for their roles in the murder of the as-yet unidentified drug courier. The superseding indictment issued June 15, 2006 enumerated three federal counts: 1) murder while engaged in a conspiracy to distribute cocaine in violation of 18 U.S.C. § 848(e)(1)(A); 2) murder in the course of a violation of 18 U.S.C. § 924(c)—use of a firearm while engaged in the possession of a firearm in furtherance of conspiracies to distribute cocaine and commit robbery—in violation of 18 U.S.C. § 924(j); and 3) conspiracy to violate federal narcotics law in violation of 21 U.S.C. § 846.

II) Petitioner's Extradition from Colombia

By this time, petitioner had decamped to his native Colombia. As such, the United States sought his arrest and extradition through diplomatic channels. Pursuant to these efforts, Colombian National Police arrested petitioner for the purpose of extradition on August 3, 2006. In a resolution dated May 23, 2007, the Republic of Colombia issued a decree with conditions governing petitioner's extradition to the United States.

Two of these conditions are relevant to the current motion. First, while the decree approved extradition on Count One and "the second of the conducts

in Count Two…relating to the homicide of a person," it denied extradition on "the first behavior in Count Two of the same decision, regarding the possession and use of a firearm to promote the commission of a crime of conspiracy to distribute cocaine…and conspiracy to steal." It did so pursuant to the Colombian legal principle of dual incrimination, under which extradition is only appropriate for offenses with a corollary in Colombian law and punishable by imprisonment of four years or more in Colombia. Since the illicit possession of firearms or ammunition is only punishable by one to four years in prison in Colombia, the principle of dual incrimination prohibited "extradition based in [sic] the first of the behaviors described in count two of the referred accusation…."

Second, the decree specified that "[a]ll actions of the accused were carried out after December 17, 1997." This finding was needed to comply with Colombian law, which only authorizes extradition to the United States for offenses occurring after that date.

Under these conditions, petitioner was extradited to the United States for trial in this court.

III)   Procedural Posture

Through his counsel Stewart Orden, petitioner refused a plea offer and went to trial on October 14, 2008. Since petitioner primarily speaks Spanish, a court interpreter translated testimony and argument through a headset so that petitioner could follow the proceedings. The Government rested on October 23, 2008, and the defense did not present a case. On October 24, 2008, the jury

found petitioner guilty on Counts 1 and 2 of the superseding indictment. After the court denied a motion for a new trial, it sentenced petitioner to concurrent terms of fifty years imprisonment on each count.

Petitioner then appealed his conviction to the Second Circuit. In his appeal, petitioner raised only one question through counsel: whether the court erred by admitting the testimony of a cooperating government witness under the co-conspirator exception to the hearsay rule. Petitioner raised further questions in a *pro se* submission, in which he claimed that the court's jury instructions were improper, the evidence was insufficient to convict, and the jury was prejudiced against him. On March 17, 2010, the Second Circuit affirmed petitioner's conviction in all respects.

Petitioner then filed a *certiorari* petition with the United States Supreme Court, which was denied on May 3, 2010. Petitioner is now imprisoned in United States Prison Coleman-II in Coleman, Florida.

IV)   The Present Petition

On April 26, 2011 petitioner filed the instant motion under 18 U.S.C. § 2255. He raises six claims, all of which allege violations of his Sixth Amendment right to the effective assistance of counsel. First, he alleges that the court incorrectly instructed the jury on the elements of the crime charged in Count One, and that counsel's failure to object to the court's instructions violated the Sixth Amendment. Second, he alleges that his conviction violated the doctrine of specialty, which prohibits a defendant from being tried on charges other than those for which he was extradited, and that counsel's

failure to raise this point at trial violated the Sixth Amendment. Third, he alleges that the court incorrectly instructed the jury on the presumption of innocence, and that counsel's failure to object to the court's instructions violated the Sixth Amendment.  Fourth, he alleges that he could not be charged under Count One because its predicate conspiracy was time-barred, and that counsel's failure to raise this point violated the Sixth Amendment. Fifth, he alleges that he was entitled to the services of an interpreter at trial and during plea discussions, and that counsel's failure to provide for adequate interpretation violated the Sixth Amendment. Lastly, he alleges that the doctrine of specialty forbids the introduction of evidence relating to crimes occurring before December 17, 1997—even where the charged crimes occurred after that date—and that counsel's failure to object to the introduction of evidence on this ground violated the Sixth Amendment.

## Discussion

I)      Legal Standard

Relief under Section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962)). Unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court should conduct a hearing to "determine the issues and make findings of fact and

conclusions of law with respect thereto." 28 U.S.C. §2255(b) (2011). To receive a hearing, a petitioner "must set forth specific facts which he is in a position to establish by competent evidence." LoCascio v. United States, 395 F.3d 51, 57 (2d Cir. 2005). But if it "plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Puglisi v. United States, 586 F.3d 209, 214 (2d Cir. 2009).

  II)   The Strickland standard

Although petitioner neglected to raise the claims at issue on direct appeal, he is not procedurally barred from bringing them pursuant to Section 2255, since they allege violations of the Sixth Amendment right to effective assistance of counsel. See Massaro v United States, 538 U.S. 500 (2003). As such, petitioner's claims are ultimately governed by the standard for ineffective assistance of counsel articulated in Strickland v. Washington, 466 U.S. 668 (1984). Under this standard, petitioner must show that counsel's conduct fell below "an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 687-89, 693-94.

  III)   Petitioner's claims

The court assesses petitioner's claims in the order in which they appear in his petition.

  A) Jury instructions

Petitioner's first claim is that the court failed to instruct the jury on the

essential elements of a violation of 21 U.S.C. § 848(e)(1)(A), and that counsel's failure to object to the court's instructions violated the Sixth Amendment. The law in question imposes criminal liability on "any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under [21 U.S.C.] section 841(b)(1)(A) or section 960(b)(1), who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results…" 21 U.S.C. § 848(e)(1)(A) (2011). Petitioner asserts that the Government needed to prove beyond a reasonable doubt both 1) the elements of the predicate crime of engaging in a continuing criminal enterprise and 2) an intentional killing in furtherance of that enterprise. The court, however, did not mention a continuing criminal enterprise in its instructions.

Petitioner misreads the statute. He was charged under the prong of the statute quoted above concerning 21 U.S.C. § 841(b)(1)(A). As such, a jury instruction regarding a continuing criminal enterprise would have been inapposite. Furthermore, the court properly instructed the jury on the elements of the charged offense: a predicate violation of 21 USCS § 841(b)(1)(A) and an intentional killing commanded or otherwise caused by petitioner while engaged in that violation. See United States v. Aguilar, 585 F.3d 652, 657-658 (2d Cir. 2009); Tr. 916-18.

Thus petitioner's argument is meritless, and counsel's failure to raise a meritless argument is not objectively unreasonable under Strickland. See United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995).

B) Elements of the crime and the principle of specialty

Petitioner next argues that since the May 23, 2007 decree ("the decree") denied extradition "regarding the possession and use of a firearm to promote the commission of a crime of conspiracy to distribute cocaine…and conspiracy to steal," and Count Two of the indictment required the Government to prove exactly that conduct beyond a reasonable doubt,[1] petitioner's trial and conviction on that Count violated the decree and the principle of specialty. Here again, petitioner alleges that counsel's failure to raise this argument at trial violated the Sixth Amendment.

"Based on international comity, the principle of specialty generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country." United States v. Baez, 349 F.3d 90, 92 (2d Cir. 2003). The principle "requires that an extradited defendant be tried for the crimes on which extradition was granted, and none other." United States v. Medina, 985 F. Supp. 397, 400 (S.D.N.Y. 1997). Consequently, the Government was obligated to adhere to the limitations on petitioner's extradition contained in the decree.

The Government did so. Despite its limiting language, the decree expressly endorsed prosecution on both Counts One and Two for homicide. Had the decree prohibited petitioner's prosecution for *any* offense involving the use of a firearm to promote a drug conspiracy, it would have permitted

---

[1] Count Two includes a predicate violation of 18 U.S.C. § 924(c) (possession and use of a firearm to promote the commission of a crime of conspiracy to distribute cocaine and a conspiracy to steal) as an element in the charged homicide crime of 18 U.S.C. 924(j)

extradition only for Count One.

The decree is more naturally read to prohibit a separate conviction in the United States for a violation of 18 U.S.C. § 924(c). Extradition was partially denied pursuant to the Colombian legal principle of dual incrimination, which forbids extradition where the offense to be tried in the requisitioning state lacks a corollary in Colombian law or is punishable by imprisonment of less than four years in Colombia. The decree contrasted a sentence for illicit possession of a firearm under Colombian and American law and denied extradition for such conduct on the ground that the analogous Colombian offense is punishable by less than four years in prison. This analysis presumes a separate conviction and sentence in the respective countries on that charge alone. Petitioner, however, was tried and convicted only for the homicide crimes authorized by the extradition decree.

Consequently, petitioner's argument lacks merit, and counsel did well not to assert it.

C) Presumption of innocence

Petitioner's third claim is that the court improperly instructed the jury on the presumption of innocence and that counsel's failure to object to these instructions violated the Sixth Amendment. Petitioner claims the court's instruction impermissibly deviated from the instructions sanctioned by the Second Circuit, which include the words "if the government fails to sustain its burden you must find the defendant not guilty." See United States v. Birbal, 62 F.3d 456, 460 (2d Cir. 1995). According to petitioner, the court should have

recited this exact formulation.

The trial transcript indicates that the court instructed the jury that "if...you find that the government has failed to prove guilt by proof beyond a reasonable doubt on the count you are considering, it is your duty to find a verdict of not guilty." Tr. 935-36. Obviously, this instruction does not parrot the language of Birbal. However, Birbal only condemns alternative instructions that "[give] the jury the clearly unlawful option of convicting on a lower standard of proof." Id. In this case, the court's instructions were functionally identical to those approved in Birbal. Hence, the court's instructions properly described the presumption of innocence, and petitioner's counsel did not err by neglecting to object to them.

C) Statute of limitations for underlying offense

For his fourth claim, petitioner argues that he could not be charged in Count One with a violation of 21 U.S.C. § 848(e)(1)(A), because the five-year statute of limitations had run on the underlying conspiracy to distribute cocaine included as an element in that Count. Again, he asserts that counsel's failure to raise this argument violated the Sixth Amendment.

Petitioner begins by correctly stating that Section 848(e)(1)(A) criminalizes the intentional killing of a person while "engaging in an offense punishable under section 841(b)(1)(A)." 21 U.S.C. § 848(e)(1)(A) (2011). Petitioner then notes that the predicate offense in Section 841(b)(1)(A) is subject to the five-year statute of limitations for non-capital crimes set forth in 18 U.S.C. § 3282. Petitioner argues that the limitations period had run on the underlying

conspiracy by the time of his indictment in 2005 and consequently, he was not "punishable" for that conspiracy. He contends that as a result, the government's proof on this element must fail as a matter of law.

To support his argument, petitioner cites United States v. Jones, 101 F.3d 1263 (8th Cir. 1996), which involved a defendant's effort to overturn his conviction on two counts of murder under different prongs of Section 848(e)(1)(A)—murder in furtherance of a continuing criminal enterprise and murder while engaging in a drug conspiracy. See id. at 1268. In that case, the Government conceded that under the Double Jeopardy Clause, the defendant could not be convicted of both engaging in a continuing criminal enterprise and conspiracy to distribute cocaine, because the latter offense was a lesser included offense of the former. Id. (citing Rutledge v. United States, 517 U.S. 292 (1996)). Nonetheless, the Government contended that the defendant could be convicted twice for the same murder under the two prongs of Section 848(e)(1)(A), because each count arguably required proof of an element that the other did not. Id. But the 8th Circuit held that "Jones'[s] conspiracy is not 'punishable' under § 848(b)(1)(A) because application of the Double Jeopardy Clause to Jones' predicate conspiracy conviction has eliminated the possibility that § 841(b)(1)(A) could be triggered." Id. Consequently, "the government cannot establish a necessary element upon which Jones'[s] conviction for murder while engaging in the conspiracy rests." Id.

The Government urges the court to discount Jones on the ground that it did not concern the statute of limitations issue, which is now before the court.

This is a distinction without a difference. The <u>Jones</u> court interpreted the word "punishable" in Section 848(e)(1)(A) in just the manner petitioner suggests, and its reasoning applies with equal force to a conspiracy rendered unpunishable by the expiration of the applicable statute of limitations.

The court, however, declines to adopt petitioner's interpretation of Section 848(e)(1)(A), because such an interpretation thwarts Congressional intent. A violation of Section 848(e)(1)(A) is punishable by death. <u>See</u> 21 U.S.C. § 848(e)(1)(A) (2011). Accordingly, it is not subject to the general five-year statute of limitations. Instead, an indictment for any offense punishable by death may be found at any time without limitation. 18 U.S.C. § 3281 (2011). The elimination of a limitations period reflects the gravity of capital offenses. Indeed, the Congressional Record demonstrates that when Section 848 was amended to add this offense, supporters and detractors alike recognized the special import of their actions. See, e.g., 134 Cong Rec S 7472. After lengthy debate, Congress declared murder in the course of a drug conspiracy to be a capital crime.

While petitioner offers a plausible interpretation of "punishable" in isolation, the context in which that word appears suggests an alternative meaning that better respects Congressional intent. To wit, the words "while engaging in an offense punishable under Section 841(b)(1)(A)" serve to incorporate by reference the type of conduct with which Section 848(e)(1)(A) is concerned. The clause does not thereby radically curtail the Government's ability to prosecute capital offenses. <u>See</u> <u>United States v. Martinez-Martinez</u>,

No. 01-cr-307, 2001 WL 1287040, at *2 (S.D.N.Y. October 24, 2001).

Furthermore, this interpretation respects the concerns that animated the Jones court, for the Double Jeopardy Clause would still forbid the Government from seeking two convictions under Section 841(e)(1)(A) for both murder while engaging in a drug conspiracy and murder while engaging in a continuing criminal enterprise where Rutledge applies to the predicate violations. The Double Jeopardy analysis does not hinge on the meaning of the word "punishable."

Hence, the court interprets Section 848(e)(1)(A) to permit prosecution for murder while engaging in a drug conspiracy even when the prosecution for the underlying conspiracy is time-barred.

Lastly, petitioner's counsel did not render ineffective assistance by neglecting to raise this claim at trial. While petitioner's argument is not wholly meritless, counsel "does not have a duty to advance every nonfrivolous argument that could be made." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

D) Availability of interpreter

Petitioner's fifth claim is that he was denied a personal interpreter both at trial and during his discussion with counsel as to the Government's plea offer. Petitioner claims that this denial violated the Court Interpreter's Act ("CIA"), 28 U.S.C. § 1827 (2011), and that counsel's failure to provide for an interpreter or otherwise object to this alleged illegality violated the Sixth Amendment.

At trial, the CIA was not violated. The CIA "generally requires continuous word for word translation" of judicial proceedings. United States v. Huang, 960 F.2d 1128,1135 (2d Cir. 1992). Petitioner concedes that at trial, both he and his immediate family received continuous translation via headsets. But petitioner asserts that he was also entitled to a second translator to sit with him and help him communicate with counsel. Yet at trial, petitioner never complained of an inability to communicate with counsel. If he had complained, the court-appointed interpreter would have aided him.  Petitioner was not entitled to a second translator under the CIA, and trial counsel did well to not request one.

Petitioner's claim regarding his plea discussions fails insofar as it relies upon the CIA. 28 U.S.C. § 1827 provides for interpreters at "judicial proceedings," and neither the plain meaning of that term, nor its statutory definition in Section 1827(j) reach discussions of a plea offer between defendant and counsel.

However, petitioner more broadly claims that a language barrier prevented him from understanding the plea offer, and that had he understood it, he would have taken it.

It is well-established that counsel for a criminal defendant must convey the terms of a plea offer to his client and that the failure to do so deprives the accused of the assistance of counsel guaranteed by the Sixth Amendment. See Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000). A defendant seeking to reverse or vacate his sentence on this ground must also show that there is a

reasonable probability that, but for counsel's error, he would have accepted the plea offer and avoided a harsher sentence at trial. See Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). To make this showing, a defendant must offer objective evidence beyond a self-serving statement made after conviction that he would have accepted the plea if adequately advised on the matter. See United States v. Gordon, 156 F.3d 376, 381 (2d Cir. N.Y. 1998).

Petitioner has submitted a statement asserting that on the day before his trial, his counsel approached him with a plea offer containing a sentencing guideline range of 324 to 405 months imprisonment. Petitioner claims that at this time he understood very little English, and that his counsel discussed the plea without an interpreter. As a result, petitioner claims that he did not understand the terms of the plea offer.

Petitioner further claims that a fellow inmate discovered the plea offer while looking through petitioner's paperwork in anticipation of petitioner filing the instant motion. After learning of the terms of the offer with the help of this inmate, petitioner now claims that he would have accepted the plea offer. These allegations make out a colorable case for a Sixth Amendment violation under Boria v. Keene.

To investigate petitioner's claim further, the court ordered petitioner's trial counsel, Stewart Orden, to submit an affidavit on the matter. In his affidavit, Mr. Orden states that it is his regular practice to communicate through an interpreter with clients who "are unable to communicate in the English language to any degree which limits their ability to understand

anything about their case...." But per Mr. Orden's best recollection, "defendant herein spoke English fluently...." Mr. Orden goes on to state that he does not have a distinct memory of reviewing the plea offer with his client, although it is, of course, his practice to do so. He then states that "it is possible...that the entire agreement was not reviewed" because "defendant insisted he would only consider a potential sentence of no more than ten years."

Mr. Orden's affidavit obviously conflicts with petitioner's submission, and it does not clarify the issue before the court. For one, Mr. Orden does not specifically recall reviewing the plea offer with his client. Given Mr. Orden's otherwise fuzzy memory regarding the plea agreement, the court cannot conclusively credit his assertion that petitioner would not have accepted a plea offer with a guidelines range exceeding ten years. Secondly, Mr. Orden's recollection of petitioner's language ability is at odds not only with petitioner's statement, but with the pre-sentencing report on petitioner, in which he is described as having "limited English vocabulary."

Thus on the present expanded record, the court can neither determine whether the plea offer was reviewed with petitioner in a comprehensible manner, nor whether there is a reasonable probability that petitioner would have accepted the plea offer. An evidentiary hearing is necessary to resolve this claim.

E) Crimes prior to 1997 and principle of specialty

Petitioner's sixth and final claim is that counsel rendered ineffective assistance by failing to object to evidence relating to crimes occurring before

- 16 -

1997 on the ground that the introduction of such evidence violated the terms of the extradition decree and the principle of specialty.

The decree specified that "[a]ll actions of the accused were carried out after December 17, 1997" to ensure that petitioner would not be prosecuted for offenses occurring before that date. Had the Government actually prosecuted petitioner for his prior crimes, it would have violated the principle of specialty by ignoring a limitation on extradition issued by an asylum state. See Baez, 349 F.3d at 92. But the Government merely introduced those acts as evidence, and it is well-established that the principle of specialty "does not purport to regulate the scope of proof admissible into evidence in the judicial forum of the requisitioning state." United States v. Flores, 538 F.2d 939, 944 (2d Cir. 1976). Indeed, the Second Circuit has already rejected a substantially identical claim arising from Colombian extradition decree. See United States v. Lara, 67 Fed. Appx. 72, 73 (2d Cir. 2003).

Petitioner's claim is thus meritless, and counsel did well to neglect it.

## Conclusion

For the foregoing reason, petitioner's motion is dismissed, except insofar as an evidentiary hearing will be held to inquire further into the circumstances surrounding the plea offered to petitioner on the day before his criminal trial.

SO ORDERED.

Dated:  New York, New York
        November 25, 2013

_____
Thomas P. Griesa
United States District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/25/13